UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE,                                          Case No. 24-11490

     Plaintiff,                                Hon. F. Kay Behm
v.                                                 U.S. District Judge

DEREK D. HAMMOND,

     Defendants.
_____/

**OPINION AND ORDER GRANTING SECOND MOTION FOR
DEFAULT JUDGMENT (ECF No. 42)**

## I.   PROCEDURAL HISTORY

This order grants default judgment to Plaintiff Jane Doe for tort claims regarding a sexual assault by Defendant Derek D. Hammond.

Doe originally filed suit in Wayne County Circuit Court against Defendant Hammond ("Hammond") and the Wellness Plan Medical Center ("TWP"), alleging assault and battery and intentional infliction of emotional distress due to a sexual assault committed by Hammond (Counts I and II), and negligent hiring, training, and supervision as to TWP (Counts III and IV).  ECF No. 1, PageID.7-9.  TWP removed the matter to federal court because it is deemed to be an employee of the U.S. Public Health Service, and is eligible for coverage under the

1

Federal Tort Claims Act ("FTCA") pursuant to 42 U.S.C. §§ 233(a) and

(g).  Therefore, the proper claim was against the United States

pursuant to the Federal Tort Claims Act (FTCA), and the FTCA is the

"exclusive remedy available to the plaintiff in this case with respect to

the alleged acts or omissions" of TWP.  ECF No. 1, PageID.2.  Removal

was thus proper because the U.S. District Courts have exclusive

jurisdiction over claims within the scope of the FTCA.  28 U.S.C. §

1346(b)(1).  At the time of removal, pursuant to the Federal Employees

Liability Reform and Tort Compensation Act of 1988 §§ 5, 6, Pub. L. No.

100-694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. § 2679), the United

States of America was substituted as defendant in place of Wellness

Plan Medical Centers.  ECF No. 2; *see* 42 U.S. Code § 233(c) (procedure

to remove to United States district court).  Plaintiff and the United

States later stipulated to dismissal of the claims against the United

States with prejudice.  ECF No. 41, PageID.201 (dismissing Counts III

and IV).

Hammond, however, has not appeared in this action.  Pending

before the court is Plaintiff's Second Motion for Default Judgment

against Hammond for Counts I and II (ECF No. 42).  In addition to

service of the summons in the state court action, Plaintiff served

2

Hammond with the notice of removal in its entirety, including the complaint, as well as the request for clerk's entry of default for failure to defend, and filed on this docket proof of such service. ECF No. 25, PageID.144; ECF Nos. 36, 37, 38.[1]

Fed. R. Civ. P. 12(a)(1) provides that a defendant must provide an answer within twenty-one (21) days of being served with a summons and complaint. The deadline for Defendants to serve an answer or otherwise respond to the complaint in this matter was June 13, 2024. Plaintiff filed her renewed request for entry of default against Hammond on March 25, 2025, which was entered the next day. ECF Nos. 25, 26. On June 17, 2025, Plaintiff moved for a default judgment against Defendant Hammond. ECF No. 42. On January 28, 2026, the court held a hearing on Plaintiff's motion at which Plaintiff's counsel appeared.

The material on which the court relies for its damages calculations was at first filed under a motion to seal. ECF Nos. 47, 48. But the court denied the motion to seal as to all but two exhibits. ECF No. 49.

---

[1] Upon Plaintiff's first motion for default judgment, the court ordered that the notice of removal be served on Hammond prior to renewing her motion.

So Plaintiff's brief and most of her exhibits were re-filed in redacted

form at ECF No. 50; the complete unredacted versions remain under

seal and may be considered by the court because Plaintiff promptly filed

the narrowly redacted version.  *See* LR 5.3(b)(3)(C)(ii), (iii)(2).

## II.   FACTUAL BACKGROUND

On or about October 29, 2021, Plaintiff sought medical treatment

at TWP's East Medical Center.[2]  Plaintiff was instructed to go sit in

an examination room, where she would get her blood pressure taken.

Shortly after Plaintiff entered the examination room, Defendant

Hammond entered and closed the door behind him.  Plaintiff pulled her

arm out from under her jacket so that Hammond could properly wrap

the blood pressure cuff around her arm.  When Plaintiff pulled her arm

out from under her jacket, her bra was exposed and, due to the fact that

she had a hole in her bra, so was her breast.  Hammond sat down in a

chair next to Plaintiff while he wrapped the cuff around Plaintiff's arm.

Once Hammond wrapped the cuff around Plaintiff's arm, he leaned

down and began sucking and licking the nipple of Plaintiff's exposed

breast.  Hammond simultaneously grabbed Plaintiff's hand and forced

---

[2] On a motion for default judgment, the court takes these facts from the
Complaint and accepts them as true.  ECF No. 1, PageID.1-7.

it onto his clothed penis.  Plaintiff then used her free hand to push

Hammond away.  Once Plaintiff freed herself from Hammond, he told

her to go into another examination room where she would be seen by a

nurse practitioner.

## III.   STANDARD OF REVIEW

"Entry of default and a default judgment are distinct events that

require separate treatment."  *Ramada Franchise Sys., Inc. v. Baroda*

*Enters., LLC*, 220 F.R.D. 303, 304 (N.D. Ohio 2004) (internal citation

omitted).  An entry of default is a prerequisite to a default judgment.

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise

defend, and that failure is shown by affidavit or otherwise, the clerk

must enter the party's default."  An entry of default "conclusively

establishes every factual predicate of a claim for relief."  *Thomas v.*

*Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX*

*Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)).  However, entry of a default

does not establish damages.  *See Antoine v. Atlas Turner, Inc.*, 66 F.3d

105, 110 (6th Cir. 1995); *see also Kelley v. Carr*, 567 F. Supp. 831, 841

(W.D. Mich. 1983) ("A default judgment on well-pleaded allegations

establishes only defendant's liability; plaintiff must still establish the

extent of damages."). Thus, the plaintiff is required to provide proof of all damages sought in the complaint. *See John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir. 1984) ("We recognize that the law 'does not require impossibilities' when it comes to proof of damages, but it does require whatever 'degree of certainty tha[t] the nature of the case admits.'") (internal citations omitted). Fed. R. Civ. P. 55(b)(2) allows courts to conduct hearings in order to "determine the amount of damages" so it may effectuate a judgment.

Because a default has been entered, all of Plaintiff's well-pleaded allegations, except those relating to damages, are deemed to be admitted. However, the facts must still be "sufficient to support a finding of liability as to each defendant" as to each claim. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). "In other words, the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Howard v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 U.S. Dist. LEXIS 45175, at *9 (E.D. Mich. Mar. 16, 2020).

## IV.   ANALYSIS

### A.   Default As to Liability

#### 1)   *Count I: Assault and Battery*

6

"A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Rowlery v. Genesee Cty.*, 54 F. Supp. 3d 763, 772-73 (E.D. Mich. 2014) (citing *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991)) (second citation omitted).  An assault is the intent to commit a battery; the presence of a battery presumes the existence of an assault.  *See Tinkler v. Richter*, 295 Mich. 396, 401 (1940).  Hammond willfully and intentionally committed an offensive touching of Plaintiff, and is liable for assault and battery.

> 2)      *Count II: Intentional Infliction of Emotional Distress*

To establish intentional infliction of emotional distress, the plaintiff must show four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985). By virtue of defaulting, Hammond has admitted that his sexual assault was extreme and outrageous, that he intended to commit it and to cause severe emotional distress or in reckless disregard to the risk of such harm, and that his conduct did in fact cause severe emotional distress.

*See* ECF No. 1, PageID.8; *see Swain v. Morse*, 332 Mich. App. 510, 536 (2020).

Plaintiff's motion for default judgment is therefore **GRANTED** as to Counts I and II.

### B.    Remedies

The only remaining matter is to ascertain Plaintiff's damages with "reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x. 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved") (citation omitted).   While Fed. R. Civ. P. 55(b)(2) gives courts the discretion to conduct an evidentiary hearing, damages may also be ascertained through evidence on the record.   *Vesligaj*, 331 F. App'x at 355.   The court may, for example, rely on affidavits and other documentary evidence.   *Garrett v. Equifax Info. Servs., LLC*, No. 24-cv-12790, 2025 LX 119563, at *3, 2025 WL 1524457 (E.D. Mich. May 28, 2025).

In tort cases, actual damages include damages for all the legal and natural consequences of an injury, including economic loss, pain and suffering, and mental and emotional distress.   *Hannay v. Dep't of Transp.*, 497 Mich. 45, 65 (2014).   That may include past and future

8

pecuniary losses (including medical expenses, lost wages, or lost earning capacity) and past and future nonpecuniary damages (such as pain and suffering, mental anguish, denial of social pleasure, embarrassment, or humiliation).  *See Davis v. Ivy*, No. 11-10803, 2013 LX 77550, at *8 (E.D. Mich. Sep. 26, 2013), *report and recommendation adopted*, No. 11-10803, 2013 U.S. Dist. LEXIS 155982, at *1, 2013 WL 5902035 (E.D. Mich. Oct. 31, 2013) (citing *Phillips v. Butterball Farms Co.*, 448 Mich. 239, 251 & n. 32 (1995)).[3]

### 1)    *Economic Damages*

Plaintiff's claims for economic damages primarily sound in her claim that, in fear and anxiety of Hammond knowing her address (as her medical provider), Plaintiff packed up her family and moved out of state.  *See* ECF No. 50-2, PageID.357-58 (affidavit).  Plaintiff says she became afraid to live in Southeast Michigan and sold her home for less than it was worth because Defendant Hammond had access to her address, phone number, and personal information on her medical

---

[3] Exemplary damages may also be awarded in intentional tort cases to "compensate a plaintiff for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, willfully and wantonly inflicted by the defendant."  *B & B Investment Group v. Gitler*, 229 Mich. App. 1, 9-10 (1998) (citation omitted). Plaintiff did not seek these damages, however, and so the court does not award them.

records.  *See* ECF No. 50, PageID.339 (brief).  Plaintiff argues that, due

to this fear and significant breach of trust by a medical provider,

Plaintiff left everything behind—except what she could fit into her car.

*See id.*  In this process, Plaintiff allegedly lost her music production

equipment and accessories of her music production company, her main

source of income.  Because Plaintiff's company was run from her home,

she says that she lost everything when she left the state.

Given that Defendant has not appeared or presented

controverting evidence, the court will ultimately not question Plaintiff's

sworn statements that she fled the state for fear of Defendant, even

several months after the event, and will credit Plaintiff's explanation

that the primary reason for that move and immediate economic loss was

Defendant's conduct and the resulting emotional distress, anxiety, and

paranoia.  But overall, the court is not convinced that each of Plaintiff's

travel expenses over multiple moves and multiple states are

attributable solely to Defendant's conduct, nor does the evidence show

those facts by the preponderance of the evidence or reasonable

certainty.

For example, the court is not convinced that Plaintiff's decision

not to hire a moving van when leaving Michigan is attributable to

Defendant's conduct, or that the loss of her music equipment is fairly considered an economic loss resulting from his conduct.  Nor are ordinary living expenses attributable to Defendant's conduct, because at least some amount of housing cost and ordinary living expenses would have been incurred by Plaintiff even had she remained in her prior home.  The court can compensate her mental anguish and emotional harms done to her through noneconomic damages, but these particular harms are too downstream of the conduct at issue to be recoverable.

Plaintiff's sale of her old home and purchase of a new home is also insufficiently related to Defendant's conduct to be recoverable, and the court does not award any amount of that cost.  The evidence indicates that Plaintiff sold her old home for less than it was worth, but it is not explained whether the proceeds of the sale were used solely to pay off a mortgage and thus no cash was generated, or whether she was able to pocket any cash that was then used for some of these other expenses.  It is also likely the case that there were options available other than selling the home, such as renting the property.  The court finds that any economic damage incurred by that sale and subsequent purchase is too attenuated from Hammond's actions to be recoverable, and that any

11

damage from those events was in any case not established with reasonable certainty.

That leaves the costs associated with Plaintiff's various moves when leaving Michigan and the housing costs as a result of those moves. The court finds that the evidence shows Plaintiff's initial move from Michigan was at least in part attributable to her credible fear of Defendant, so the court would award some percentage, perhaps 40%, of her housing expenses from December 2021 to January 2022, though would not award any damages for food and clothing or other necessities during that time. However, on review of Plaintiff's briefing, she does not actually attach any evidence for the fact that her expenses were $4,000 at the Red Roof Inn. That statement is her counsel's assertion in her brief – Plaintiff's affidavit, for example, does not address that amount, and no receipts are attached. *See* ECF No. 50, PageID.346; ECF No. 50-2, PageID.358. So the court cannot award any damages in this regard with "reasonable certainty."

Subsequent moves are likewise in part attributable to Defendant's original conduct and Plaintiff's initial move from Michigan based on her fear of Defendant, but each of these successive moves significantly attenuates the chain of causation. See ECF No. 48, PageID.245 ("insect

12

infestation, financial hardship, and other extenuating circumstances"
forced them to move again); ECF No. 48-3, PageID.263 (relocating again
for unexplained reasons).  The court would award 25% of these expenses
in recognition that she would likely not have left Michigan at all but for
Hammond's conduct, but some of these expenses are again unsupported
by evidence.  For example, $1,750 allegedly spent on 5 weeks of housing
is not accounted for by any particular line item that the court can see.
Charges related to that stay appear to be incidental expenses while at
that location, not a particular hotel.  *See* ECF No. 48-11.  The court
awards 25% of the expenses involved in moving from state to state,
exclusive of food, clothing, and other necessities, and only regarding
those expenses that can be calculated with "reasonable certainty."  The
court calculates this amount to be $421.48.[4]

Plaintiff does not explain or provide evidence to back up any lost
wages attributable to Hammond's conduct, and so the court ignores the
allegation regarding the loss of the business run from her home.

---

[4] To ship her car to another state cost $800 (ECF No. 48-7), a Hampton Inn
stay cost $312.30 (ECF No. 48-8), and an Econolodge stay cost of $573.60 (ECF No.
48-9).  While Plaintiff originally attached a receipt for flights under seal, she did not
attach an unredacted/publicly filed version and so the court cannot consider that
cost.  *See* LR 5.3(b)(3)(C)(iii)(2).  (800 + 312.30 + 573.60) *.25 = $421.48.

Her total economic damages that can be calculated with reasonable certainty are therefore set at $421.48.

     2)    *Noneconomic damages*

The far greater amount of her damages are her noneconomic damages.  Since the assault, Plaintiff alleges that she has continually suffered severe mental anguish, PTSD, anxiety, depression, loss of enjoyment of life, humiliation, mortification and embarrassment, and constant fear and anxiety.  On the day of the assault, she was diagnosed with dyspnea, hypertension, tachycardia, and tachypnea.  ECF No. 48-1; ECF No. 50, PageID.341.  Plaintiff subsequently sought and received treatment and medical care for anxiety, paranoia, and other mental health conditions from Avalon Healing Services, Team Mental Health Services, and DWIHN.[5]  On May 27, 2025, Plaintiff presented for a psychiatric evaluation with Gerald A. Shiener, M.D.  ECF No. 48-4.  Dr. Shiener's diagnostic impression of Plaintiff (notably, four years after the event) was that the sexual assault severely impacted her mental health and relationships.  ECF No. 48-4, PageID.272.

---

[5] Plaintiff does not cite to anything specific for this point, though Dr. Shiener refers to an "Avalon Forensic Examination" and "Team Mental Health" in his report.  ECF No. 48-4.

Plaintiff alleges her "ability to form personal relationships has completely devolved." ECF No. 50, PageID.342. She "struggles to maintain a romantic relationship after the assault, due to fear, anxiety, and apprehension." *Id.*; *see also* ECF No. 48-4, PageID.269. She also alleges that her relationship with her children has faced difficulties as a result of her anguish, distress, and anxiety from Hammond's assault. ECF No. 50, PageID.342. The court notes that the negative impact of sexual assault on a plaintiff's relationships, family, behavior, and general wellbeing may be considered, including lost relationships with children and parents, sleeplessness, depression, and anxiety. *See Buetenmiller v. Cogswell*, No. 20-11031, 2022 LX 40353, at *24 (E.D. Mich. July 8, 2022) (citing *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997)). The court finds that Plaintiff has proven that she suffered mental anguish, anxiety, depression, loss of enjoyment of life, humiliation, mortification and embarrassment, and fear and anxiety, all of which are compensable.

The court also considers comparable cases. In assessing non-economic damages, "[a] review of other cases involving sexual assaults reflects that they frequently trigger substantial compensatory awards, typically in the low-to-mid hundreds of thousands of dollars." *See Offei*

15

*v. Mahmoud Abdel-Salam Omar*, No. 11-cv-4283, 2012 WL 2086294, at

\*5, 2012 U.S. Dist. LEXIS 80171, at \*15 (S.D.N.Y. May 18, 2012) (citing

cases), *report and recommendation adopted*, 2012 WL 2086356, 2012

U.S. Dist. LEXIS 80144 (S.D.N.Y. June 8, 2012); *see also Sarhadi v.*

*Geever*, No. 1:24-cv-31, 2025 LX 297737, at \*18-19 (N.D.N.Y. July 22,

2025) (awarding $600,000 where plaintiff was raped once, had PTSD

and depression, and terminated a pregnancy); *Angulo v. 36th St.*

*Hospitality LLC*, 19-cv-5075, 2020 WL 4938188, at \*12-14, 2020 U.S.

Dist. LEXIS 137816, at \*32-38 (S.D.N.Y. July 31, 2020) (awarding

$300,000 in emotional distress damages where defendant raped

plaintiff once and harassed her on an ongoing basis), *report and*

*recommendation adopted*, 2020 WL 4936961, 2020 U.S. Dist. LEXIS

153278 (S.D.N.Y. Aug. 24, 2020); *see also A.B. v. Staropoli*, No. 08-4585,

2013 WL 12441525, at \*6-8, 2013 U.S. Dist. LEXIS 206771, at \*19-25

(awarding $600,000 in compensatory damages where plaintiff, a minor,

was groomed and sexually abused in numerous instances by defendant,

her soccer coach, but noting that there was "little evidence" concerning the plaintiff's more recent psychological state).[6]

Cases in this circuit award similar numbers, if sometimes slightly more modest.  *See McPeters v. Thomas*, No. 3:18-39, 2021 U.S. Dist. LEXIS 50478, 2021 WL 1033240, at *7 (E.D. Tenn. Feb. 24, 2021) ($250,000 default judgment where a probationer was sexually harassed by and forced to perform oral sex on her probation officer), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 50264, 2021 WL 1030981 (E.D. Tenn. Mar. 17, 2021), *aff'd sub nom. McPeters v. Parker*, No. 21-5401, 2022 U.S. App. LEXIS 12325, 2022 WL 1440652 (6th Cir. May 6, 2022); *Mize v. Tedford*, No. 08-10660, 2009 U.S. Dist. LEXIS 45316, 2009 WL 1508375, at *3 (E.D. Mich. May 29, 2009) ($350,000 default judgment for an individual who was raped by a police officer after a traffic stop), *aff'd*, 375 F. App'x 497 (6th Cir. 2010); *Buetenmiller v. Cogswell*, No. 20-11031, 2022 LX 40353, at *27 (E.D. Mich. July 8, 2022) (awarding $550,000 in compensatory damages per plaintiff where a jail medical director groped and digitally penetrated plaintiffs during

---

[6] All of these are S.D.N.Y. cases.  The court found *Sarhadi*, which collected cases from that district, persuasive, and so the court repeats some of those citations here.  The court does not find there to be a substantive reason to treat amounts awarded in that district for compensatory emotional damages as dramatically different from what is available to a Plaintiff in this district.

17

exams on one occasion each).  Other cases, which involved facts not present here, resulted in higher default judgments in this state.  *See Langton v. Combalecer*, No. 06-11987, 2008 WL 11504510, at *2 (E.D. Mich. July 11, 2008) ($2 million default judgment for pain and suffering where a prisoner repeatedly was sexually harassed and assaulted by a psychiatrist over the course of two years); *Morgan v. Wayne Cty.*, No. 17-12094, 2021 U.S. Dist. LEXIS 63908, 2021 WL 1220870, at *3 (E.D. Mich. Apr. 1, 2021) ($1 million default judgment to a prisoner who was sexually assaulted by another inmate and gave birth as a result of the assault); *Wilcox v. Kalchert*, No. 20-00234, 2022 U.S. Dist. LEXIS 70846, 2022 WL 1138079, at *7 (W.D. Mich. Mar. 14, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 70801, 2022 WL 1137054 (W.D. Mich. Apr. 18, 2022) ($1.5 million default judgment to a prisoner who was beaten and raped three times by a fellow inmate).

The facts here are offensive and the court does not doubt the harm to Plaintiff.  In consideration of the facts of the complaint which are now taken as true, Plaintiff's sworn statements as to the effect on her, the effect on Plaintiff's relationships with her children, Plaintiff's proven psychiatric condition (ECF No. 48-4), the circumstances of the assault, and that there is no controverting evidence presented for the

court's consideration in this posture, the court awards $250,000 in noneconomic compensatory damages.[7]

## V.     CONCLUSION

Therefore, the court **GRANTS** Plaintiff's motion for default judgment as to Counts I and II and finds Defendant Hammond liable to Plaintiff in the following amounts: $421.48 in economic damages and $250,000 in noneconomic damages, for a total of $250,421.48.

This opinion adjudges all remaining claims in this case.  A separate and final order of judgment will follow, consistent with this opinion.

**SO ORDERED**.

Date: January 29, 2026                    s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge

---

[7] The court considered Plaintiff's citations to various large-scale awards and settlements for many hundreds of millions of dollars divided by thousands of plaintiffs, which often involved high-profile repeat offenders, but the court did not find those cases to be persuasive comparators to this single-plaintiff, single-incident case.